Leonard **GREENE** and Joyce **Greene, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. 94 Civ. 0617 (BDP).**

United States District Court, S.D. New York.

Aug. 2, 1997.

Sheldon Elsen, Orans Elsen & Lupert, New York City, for Plaintiffs.

Robert Sadowski, Asst. U.S. Atty., U.S. Attorney's Office, New York City, for Defendant.

## MEMORANDUM DECISION & ORDER

PARKER, District Judge.

This matter, which is before this Court following remand from the United States Court of Appeals, involves the income tax consequences arising from the donation of futures contracts by Leonard Greene and Joyce Greene (collectively "the Greenes") to the Institute for Socioeconomic Studies ("the Institute"), an exempt private operating foundation under 26 U.S.C. § 501(c)(3). *See Greene v. United States,* 79 F.3d 1348 (2d Cir.1996) (*Greene II*). The Greenes' donations have been the subject of a number of prior proceedings. *See Greene v. United States,* 806 F.Supp. 1165 (S.D.N.Y.1992); *Greene v. United States,* 13 F.3d 577 (2d Cir.1994) (*Greene I*); *Greene v. United States,* 864 F.Supp. 407 (S.D.N.Y.1994). Familiarity with these opinions is assumed.

*Greene II* considered, *inter alia,* whether 26 U.S.C. § 1256 required recognition by the Greenes of the economic gain accrued with respect to the donated futures contracts before they were transferred to the Institute. Section 1256—titled "Section 1256 contracts marked to market"[1]—provides in relevant part:

(a) General Rule. For purposes of this subtitle—

(1) each section 1256 contract held by the taxpayer at the close of the taxable year shall be treated as sold for its fair market value on the last business day of such taxable year (and any gain or loss shall be taken into account for the taxable year),

(2) proper adjustment shall be made in the amount of any gain or loss subsequently realized for gain or loss taken into account by reason of paragraph(*l*).

(3) any gain or loss with respect to a section 1256 contract shall be treated as—

(A) short-term capital gain or loss, to the extent of 40 percent of such gain or loss, and

(B) long-term capital gain or loss, to the extent of 60 percent of such gain or loss,

* * * * * *

(c) Terminations, etc.—

(1) In general.—The rules of paragraphs (1), (2), and (3) of subsection (a) shall also apply to the termination (or transfer) during the taxable year of the taxpayer's obligation (or rights) with respect to a section 1256 contract by offsetting, by taking or making delivery, by exercise or being exercised, by assignment or being assigned, by lapse, or otherwise.

■ According to § 1256, a taxpayer's futures contracts are annually treated as if sold for fair market value on the final business day of the tax year. As every contract is "constructively sold" each year, a taxpayer must recognize accrued gains and losses annually by marking-to-market. *See Greene II,* 79 F.3d at 1354. In § 1256(c)(1) "this mark-to-market rule is applied to instances where taxpayers terminate or transfer their obligations or rights under a regulated futures contract. That is to say, the futures contract must not only be marked annually to market when a taxpayer retains the contract; it must also be marked-to-market when a taxpayer transfers the contract." *Id.*

*Greene II* concluded that the mark-to-market rules of § 1256(a)(1) applied with full force to the Greenes' charitable donations. As a consequence, the Greenes were required to "mark their futures contracts to market as of the date the contracts [were] transferred to the Institute and recognize as income their accrued long term capital gains." *Greene II,* 79 F.3d at 1355–56.

Having determined that this result was required by the statute, the Court of Appeals directed this Court to "apply § 1256 in proceedings consistent with this opinion. Plaintiffs must mark their futures contracts to

---

1. 26 U.S.C. § 1256(b) defines a "Section 1256 contract" as

   (1) any regulated futures contract,

(2) any foreign currency contract,

(3) any nonequity option, and

(4) any dealer equity option.

market at the time of termination or transfer—here, the time of donation to charity—and recognize any economic gain." *Id.* at 1358.

■ On remand, the Greenes' position is that *Greene II* did not address, and thus left for resolution by this Court, precisely how to calculate the amount, if any, of "economic gain" they experienced as a consequence of their contributions to the Institute. Specifically, while conceding that, pursuant to § 1256, they must mark-to-market all contracts held at year-end, they argue that a second step is required that the Court of Appeals did not have occasion to consider in *Greene II,* namely, making the "proper adjustment," under 26 U.S.C. § 1256(a)(2), for the amount "subsequently realized" upon the transfer of the futures contracts.

The Greenes urge this Court, in making that "proper adjustment," to adopt the definition of "amount realized," as set forth in 26 U.S.C. § 1001(b).[2] Applying that definition to their own situation, the Greenes contend that their donation of futures contracts has yielded them no "economic gain" because they, in fact, received no money or property in exchange for that donation. As a result, they claim that they are entitled, under § 1256(a)(2) to a "proper adjustment" in the form of an offset against the constructive gain said to have been "realized" under § 1256(a)(1)'s mark-to-market rules. According to the interpretation of § 1256 and § 1001 advanced by the Greenes, the gain recognized by marking-to-market, and which is subject to taxation, should be reduced to zero.

The government, on the other hand, contends that the question of how to interpret § 1256(a)(2)'s "proper adjustment" language has already been addressed and resolved by the Court of Appeals. Specifically, the government points to the Court of Appeals' reading of Section 1256 as requiring the Greenes to mark their long-term capital "gain to market and recognize it as income before the contract is donated to charity." *Greene II,* 79 F.3d at 1357.

The government further argues that subsection 1256(a)(2)—the starting point of plaintiffs' argument that their gain should be reduced to zero—only allows for the proper adjustment of gain or loss upon termination of the taxpayer's interest in futures contracts to reflect prior marked-to-market gains and losses recognized before the taxpayer terminated his interest in the contracts.

Thus, according to the government, the "proper adjustment" provision of § 1256(a)(2) merely gives the taxpayer a "stepped-up" or "stepped-down" basis—to the extent that the taxpayer reported marked-to-market gain or losses on his futures contract in the prior taxable year pursuant to § 1256(a)(1)—in respect of futures contract still held at the beginning of the following year. Thus for example, if a taxpayer acquires a futures contract in 1995, that contract must be marked-to-market on December 31, 1995 (the last business day of the taxable year) and the unrealized gain or loss recognized and reported in 1995. *See* 26 U.S.C. § 1256(a)(1). Assuming the contract has increased in value by $2,000 on December 31, 1995, the taxpayer would recognize gain of $2,000. Accordingly, on January 1, 1996, the taxpayer's "basis" in the contract is increased by $2,000 to reflect the gain reported in 1995. *See* 26 U.S.C. § 1256(a)(2); *Greene II,* 79 F.3d at 1354. If the taxpayer terminates his interest in the futures contract by transferring it to a charity (or by any other means) in 1996, the taxpayer must mark the contract to market on the date of the transfer and recognize any inherent gain or loss at the time of the termination. *See id.* at 1355. If the contract on the date of transfer had further appreciated in value for a total gain of $3,000, the taxpayer must recognize gain of $1,000 ($3,000 increase in value less $2,000 "basis" for gain already recognized in 1995).

The Greenes respond by arguing that construing 26 U.S.C. § 1256(a)(2) to apply to gains or losses recognized before the charitable donation is a selective reading that fails

---

**2.** 26 U.S.C. § 1001(b) states:
The amount realized from the sale or other disposition of property shall be the sum of any

money received plus the fair market value of the property (other than money) received.

adequately to consider the various provisions of § 1256—specifically the requirement in § 1256(a)(2) that a "proper adjustment shall be made" for any gain or loss subsequently realized. The Greenes argue such failure to provide, in the manner they propose, for a "proper adjustment" would mean, in effect, that taxes are imposed when in actuality the taxpayer has received "no economic gain."

Were this Court writing on a clean slate, there might be some symmetry to the Greenes' position. The Court of Appeals, however, construed 26 U.S.C. § 1256(a)(2) to provide for "proper adjustment" in gains or losses previously recognized under the mark-to-market system when the taxpayer's interest in the futures contracts are terminated by a transfer to charity. The Court of Appeals further explained that the purpose of § 1256(a)(2) was to insure that the taxpayer is taxed only on actual accessions to wealth from the date of the transfer and is designed to avoid the otherwise inequitable result of requiring the taxpayer to pay duplicative taxes on gains required to be realized when the mark-to-market rules are triggered:

> The statute takes into account the gain or loss constructively received during the previous year. This presents double taxation and double deduction. In other words, when a taxpayer's futures contract declines in value in Year 2 but increases in Year 3, the contract's value at the end of Year 2 serves as the basis when the taxpayer determines liabilities in Year 3. In this fashion, a taxpayer claiming a deduction in Year 2 cannot deny liability in Year 3 by referring to a year one basis. 26 U.S.C. § 1256(a)(2).

*Greene II*, 79 F.3d at 1354.

The Greenes' intention to bestow a public good has foundered, at least in part, on a statute requiring gain or loss to be recognized whether or not actually realized by the holder of futures contracts. The statute forces the Greenes, in effect, to treat their contributions as cash as opposed to contributions of investment contracts, *see Greene II*, 79 F.3d at 1357, and does not accommodate the adjustment under § 1256(a)(2) that they

seek. The parties are instructed to settle a judgment in 21 days.

**SO ORDERED.**